IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SCHLEIKA CASTAN, <br><br> **Plaintiff,** <br><br> -v- <br><br> EQUIFAX INFORMATION SERVICES, LCC, TRANS UNION, LLC, and NATIONAL CREDIT AUDIT CORP., <br><br> **Defendants.** | Civil Case Number: <br><br> <u>CIVIL ACTION</u> <br><br> COMPLAINT <br> AND <br> DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.  Identity theft has long been a widespread problem in this country. Over the past decades, identity theft has emerged as one of the fastest growing white-collar crimes in the United States.[1] Millions of Americans annually fall victim to this crime and are required to spend countless hours and untold effort in attempting to undo the resulting harm caused to their credit reports.[2]

2.  Plaintiff, Schleika Castan, has been the unfortunate victim of identity theft. Specifically, upon information and belief, at least one individual has been fraudulently opening various accounts using Plaintiff's PII and Social Security Number, without her knowledge or authorization. These accounts have destroyed Ms. Castan's credit with each of them reporting these accounts negatively.

---

[1] *See, Sloane v. TransUnion Info. Servs., LLC*, 510 F.3d 495, 505 (4th Cir. 2007).

[2] Victimization surveys conducted by Synovate for the Federal Trade Commission estimate that, between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone. *See,* Graeme R. Newman & Megan M. NcNally, *Identity Theft Literature Review* 14 (2005), http://www.ncjrs.gov/pdffiles1/nij/grants/210459.pdf (citing Synovate, Federal Trade Commission—Identity Theft Survey Report 7, 12 (2003), http:// www.ftc.gov/os/2003/09/synovatereport.pdf).

3. Rather than working with Ms. Castan to rectify this unfortunate situation, each of the Defendants refuse to remove these fraudulent accounts from her credit report, despite the Plaintiff specifically disputing these fraudulent items. Instead, the Defendants have continued to willfully and negligently harm the Plaintiff's credit report by continuing to associate these fraudulent accounts with the Plaintiff, thereby severely impacting Plaintiff's life and her ability to obtain credit.

4. Plaintiff thus brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging Transunion, Equifax, and NCAC have been negligently, recklessly and knowingly disseminating false information regarding the Plaintiff's credit, namely by continuing to associate Plaintiff with these fraudulent accounts, particularly after the Plaintiff mailed letters to Defendants specifically advising them of this issue and submitting the necessary supporting documentation.

5. Plaintiff further alleges that the consumer reporting agencies Trans Union and Equifax failed to investigate credit report inaccuracies in response to Plaintiff's disputes.

6. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

## JURISDICTION

7. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

8. Venue is proper in this judicial District pursuant to 28 U.S.C. 1391(b)(2).

## PARTIES

9. Plaintiff, Schleika Castan ("Plaintiff"), is a resident of Prince George's County in the State of Maryland and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

10. Defendant Equifax Information Services, LLC ("Equifax") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

11. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309 and its registered agent, Corporation Service Company, is located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

12. Defendant Trans Union, LLC ("Trans Union") is also one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Transunion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

13. Defendant Trans Union's principal place of business is 555 West Adams Street, Chicago, IL 60661

14. Defendant National Credit Audit Corp. ("NCAC") is a national debt collector with its principal office located at 1 Concourse Parkway, Suite 200, Atlanta, GA 30328 and its registered agent, Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701.

## FACTUAL ALLEGATIONS

15. Sometime prior to September of 2023, Plaintiff discovered she was the victim of identity theft. Around that same time, Plaintiff noticed that a number of accounts were appearing on her consumer credit reports from Transunion, Equifax and TransUnion, stemming from accounts which were opened without her knowledge or authorization to do so. This included a National Credit Audit Corp. collections account, Account No. D441928N1X44***.

16. This account listed an original creditor of Kings Park Plaza. This was location for which Plaintiff had lived from approximately 2018-2020 with her mother. However, Plaintiff vacated the housing in 2020 without renewing the lease. Her mother remained in the dwelling, having signed a renewal individually. When Plaintiff vacated the housing, there were no amounts owed under the lease ending in 2020.

17. Accordingly, Plaintiff took appropriate action, including completing a sworn FTC Identity Theft Affidavit, in which she listed the account as it was appearing on her credit reports despite the fact that it was not hers and she had never opened it or incurred this debt.

18. On multiple occasions, including on or about October 13, 2023, Plaintiff disputed this fraudulent account with Transunion and Equifax, asserting that the accounts was not hers, that Plaintiff was the victim of identity theft, and that this information should be removed or blocked.

19. With those disputes, Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

20. Upon information and belief, NCAC was notified of Plaintiff's disputes.

21. Following receipt of Plaintiff's dispute, Equifax failed to conduct a reasonable investigation, correct or remove the fraudulent NCAC Account from the Plaintiff's credit file. Instead, that information is still being reported to this day.

22.     Upon information and belief, Equifax had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

23.     Transunion also refused to investigate, correct or remove the fraudulent NCAC Account from the Plaintiff's credit file.  Instead, that information is still being reported to this day.

24.     Upon information and belief, Transunion had all the information they needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

25.     Equifax, Transunion and NCAC were each notified of the respective disputes, but refused to investigate and/or remove inaccurate reporting.

26.     At all times pertinent hereto, Defendants' violations of the FCRA were willful, and carried out in reckless disregard for consumer's rights as set forth under section 1681s, 1681i and 1681b of the FCRA. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

27.     Additionally, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

28.     In any event, Defendants are liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

29.     As a direct and proximate result of the Defendants' willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in her daily life, by the impact that this derogatory information has had on her credit score and the defamatory harm that Plaintiff has suffered as a result of having this fraudulent, negative information attributed to her and disseminated to creditors. For example, Plaintiff has been denied credit due to these derogatory inaccuracies, and has been offered credit on less favorable terms.

30.     Defendants' violations of the FCRA further caused the Plaintiff great distress,

anger, annoyance and frustration in his daily life, and subjected the Plaintiff to abusive credit reporting practices from which Plaintiff had a substantive right to be free.

### COUNT I
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### AGAINST TRANSUNION

31. All preceding paragraphs are realleged.

32. At all times pertinent hereto, Transunion was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

33. The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

34. On multiple occasions, including or about October 13, 2023, the Plaintiff initiated a dispute with Transunion requesting that they correct and remove the specific fraudulent items in her credit file that were patently inaccurate and damaging to her, including the fraudulent NCAC Account. Plaintiff provided information and documentation showing that she was the victim of identity theft and had not opened this account.

35. However, Transunion never adequately investigated the Plaintiff's disputes, as required by the FCRA.

36. Instead, Transunion, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic

investigation would have prevented.

37. As a direct and proximate result of Transunion's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT II
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681c-2
## AGAINST TRANSUNION

38. All preceding paragraphs are realleged.

39. On or about October 13, 2023, Plaintiff initiated a dispute with Transunion requesting that they correct and remove the fraudulent NCAC Account, as this account was fraudulently opened by an individual other than the Plaintiff.

40. In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

41. Transunion refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

42. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Transunion continued to report this fraudulent information.

43. As a direct and proximate result of Transunion's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT III
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)

**AGAINST TRANSUNION**

44. All preceding paragraphs are realleged.

45. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

46. Accordingly, Transunion was required to follow procedures to assure maximum possible accuracy of the credit reports it prepared concerning Plaintiff. However, Transunion failed to do so.

47. Were Transunion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the fraudulent NCAC Account from the Plaintiff's credit report, especially after the Plaintiff (1) disputed the account with Transunion on numerous occasions, and (2) provided Transunion with documents and information definitively establishing that she was the victim of identity theft and that this account was not opened by her.

48. Furthermore, were Transunion to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided Transunion with the information reflecting that this information was inaccurate.

49. As a direct and proximate result of Transunion's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

**COUNT IV**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681i**
**AGAINST EQUIFAX**

50. All preceding paragraphs are realleged.

51. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

52. The FCRA provides that:

> "***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(a) (emphasis added).

53. On multiple occasions, including on or about October 13, 2023, the Plaintiff initiated a dispute with Equifax requesting that they correct and remove the specific fraudulent items in her credit file that were patently inaccurate and damaging to her, including the fraudulent NCAC Account. Plaintiff provided information and documentation showing that she was the victim of identity theft and had not opened this account.

54. However, Defendant Equifax never adequately investigated the Plaintiff's disputes, as required by the FCRA.

55. Instead, Equifax, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information, something that any basic investigation would have prevented.

56. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT V
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681c-2
## AGAINST EQUIFAX

57. All preceding paragraphs are realleged.

58. On or about October 13, 2023, Plaintiff initiated a dispute with Equifax requesting that they correct and remove the fraudulent NCAC account, as this account was fraudulently opened by an individual other than the Plaintiff.

59. In support of this dispute, the Plaintiff included copies of the sworn FTC Identity Theft Affidavit.

60. Equifax refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

61. As such, instead of following the law and blocking the fraudulent information on the Plaintiff's credit report within four days of receiving the dispute, Equifax continued to report this fraudulent information.

62. As a direct and proximate result of Equifax's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## COUNT VI
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## AGAINST EQUIFAX

63. All preceding paragraphs are realleged.

64. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

65. Accordingly, Equifax was required to follow procedures to assure maximum

possible accuracy of the credit reports it prepared concerning Plaintiff. However, Equifax failed to do so.

66. Were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the fraudulent NCAC account from the Plaintiff's credit report, especially after the Plaintiff (1) disputed the account with Equifax on numerous occasions, and (2) provided Equifax with documents and information definitively establishing that she was the victim of identity theft and that this account was not opened by her.

67. Furthermore, were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided Equifax with the information reflecting that this information was inaccurate.

68. As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

## COUNT VII
### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 U.S.C. § 1681s-2(b)
### AGAINST NCAC

69. All preceding paragraphs are re-alleged.

70. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

71. On numerous occasions, including or about October 13, 2023, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by NCAC.

72. Upon information and belief, NCAC received notice of these disputes from the credit bureaus.

73. NCAC was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

74. Even after the Plaintiff properly disputed these accounts with the credit reporting agencies, NCAC refused to conduct a reasonable investigation and continued inaccurately reporting the multiple fraudulent accounts on Plaintiff's credit reports.

75. NCAC's conduct violated section 1681s-2(b) of the FCRA.

76. As a result of NCAC's conduct, Plaintiff was harmed, as discussed above.

## DEMAND FOR TRIAL BY JURY

77. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A. Awarding Plaintiff actual damages, statutory damages and punitive damages pursuant to pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

B. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

C. A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

D. Equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

E. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Dated: December 18, 2023

By: /s/ Kathy L. Ducassou
Kathy L. Ducassou, Esq.
Federal Bar No.: 05650
2383 Sundew Terrace
Baltimore, MD 21209
Tel: (410) 624-5244
Email: Ducassou@aol.com
*Attorney for Plaintiff*

Yitzchak Zelman
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
(732) 695-3282 telephone
(732) 298-6256 facsimile
*Attorney for Plaintiff*
*Pro Hac Vice Motion to be Filed*